**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH LEE, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>THURSDAY BOOT COMPANY,<br><br>              Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Joseph Lee, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through his attorneys as follows:

## INTRODUCTION

1.      This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant Thursday Boot Company ("Thursday Boot") arising from its deceptive addition of junk fees to consumers' shopping carts.

2.      When consumers browse products on Thursday Boot's website, Thursday Boot advertises the price of its retail items, along with an advertisement for either free or flat rate shipping. Those pricing representations are false, however, because Thursday Boot surreptitiously adds junk fees to consumer purchases, including a so-called "Shipping Protection" fee.

3.      As discussed in detail herein, the assessment of these fees is deceptive and unfair, because: (a) Thursday Boot sneaks these fees into consumers' shopping carts using a prechecked box; (b) the fees are nothing more than an additional cost for shipping, rendering Thursday Boot's promise for "free" shipping false; (c) the fees themselves are deceptively named and described;

and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent Defendant's deception.

4.      Thousands of e-commerce customers like Plaintiff have been assessed hidden shipping charges for which they did not bargain due to Thursday Boot's deceptive tactics.

5.      By unfairly obscuring their true shipping costs, Defendant deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do not assess such a fee.

6.      Plaintiff seeks damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

## PARTIES

7.      Plaintiff Joseph Lee is a resident and a citizen of Howell, New Jersey. At the time of Plaintiff's Thursday Boot purchase, Plaintiff resided in Ithaca, New York.

8.      Defendant Thursday Boot is a retailer of boots headquartered in New York, New York with both an online and physical store presence.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

    a.      the proposed class is comprised of at least 100 members; § 1332(d)(5)(B)

    b.      at least one member of the proposed class is a citizen of a State other than New York, § 1332(d)(2)(A); and

    c.      the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Thursday Boot is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.     Thursday Boot Surreptitiously Adds Fees to Consumers' Carts**

11.     Here's how Thursday Boot's deception works, using exemplar screenshots from its website that, on information and belief, are similar to the screen flow Plaintiff viewed when purchasing from Thursday Boot.

12.     When a consumer first views thursdayboots.com, the consumer is informed at the very top of the webpage that all purchases are entitled to free shipping and returns in the U.S.



13.     When a consumer views a specific item on the website, the consumer is again informed of Thursday Boot's promise to provide free shipping and returns:



14.    Once the consumer adds the product to the cart, using the large "ADD TO CART" button, the consumer is taken to their online shopping cart where the consumer is again informed of Thursday Boot's promise to provide free shipping:



15.    After the consumer clicks the large CHECKOUT button, the consumer is taken to the checkout page where a "Shipping Protection" fee that amounts to a portion of the transaction is automatically added via a small prechecked box *without the consumer doing anything at all to add the fee*. The pre-checked box is so small and automatically toggled to opt the consumer in,

intentionally designed to go unnoticed by consumers, and engineered to force consumers to affirmatively opt-out of the junk fee in order to avoid it:



16.     This pre-selection and automatic opting in of consumers to junk fees is itself deceptive.

17.     In fact, in recognition of Thursday Boot's former deceptive practice, Thursday Boot has now *turned off* the pre-selection of its Shipping Protection fee. Now consumers must affirmatively select the toggle to purchase Shipping Protection.

18.     On information and belief, the screen-flow depicted above is the same regardless of the product purchased by a consumer.

19.     As the Federal Trade Commission ("FTC") notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used ***design tricks and psychological tactics such as pre-checked boxes***, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-

sophisticated-dark-patterns-designed-trick-trap-consumers)(emphasis added).

20.     The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy _statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

21.     This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to Thursday Boot.  The Wall Street Journal recently highlighted the problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process***.

Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall Street Journal, December 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

22.     Upon information and belief, Thursday Boot is aware that by programming its website to automatically opt in consumers to "Shipping Protection" fees, most consumers will unknowingly purchase the protection. On information and belief, Thursday Boot is further aware that had it programmed its website to offer *optional* Shipping Protection (requiring an opt-in, as it has since the filing of the lawsuit), the vast majority of consumers would not purchase it.

23.     Thursday Boot's practice is deceptive. As a reflection of this, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and larger companies, banned this pre-selection practice from retail purchases as of February of 2025.

24.     This ban is too little, too late, to help the hundreds of thousands of consumers already deceived and exploited by this practice, such as Plaintiff.

II.    **The Add-On Fees Render Promises of Free or Flat Rate Shipping False**

25.    Even beyond the deceptive manner in which the fees are added, the fees themselves are deceptive because they directly contradict other promises on Thursday Boot's website regarding "free" shipping. That is because Thursday Boot's add-on fees are, in actuality, a disguised shipping charge.

26.    Whatever the Shipping Protection fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers.

27.    But as described herein, Thursday Boos promised "free" shipping. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the "free" shipping promise.

28.    However, Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

29.    Defendant was or should have been aware that consumers were and would be deceived by an add-on shipping fee made at the same time as its promise of "free" shipping.

30.    Because it is well known that American consumers prefer free or low-cost shipping costs, Defendant made an intentional decision to disguise its true price for shipping from consumers.

31.    The deceptively added Shipping Protection fee is a hidden shipping fee. This renders false Thursday Boot's promise of free shipping.

32.    By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

33.    In addition to the manner in which the fees are added and the fact that the added fees render other "free" shipping promises false and deceptive, Defendant's fees are nonsense fees

that provide little or no value to consumers.

**III.    Defendant's "Shipping Protection" Fee Is Inaccurately Named and Described and <u>Provides No Added Value to Consumers</u>**

34.    Even beyond the deceptive manner in which the fees are added and the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" shipping, the "Shipping Protection" fees are also deceptively named and described.

35.    Popular shipping services like UPS, FedEx, USPS Priority Mail *automatically* include shipping protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the "Shipping Protection" is entirely worthless, because they are already provided the same protection by the shippers.

36.    Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

37.    For all these reasons, the Shipping Protection Fee is deceptively named and described.

38.    Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" shipping, and the fact that the "Shipping Protection" fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for the "Shipping Protection" fee because it provides essentially zero additional value to consumers.

39.    As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and

lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee provides no benefit.

IV.    **Defendant's Fees are Junk Fees and Violate Federal Guidance and California Law**

40.    Even worse, on information and belief, Thursday Boot only pays its purported shipping insurance provider, Route, approximately half of the Shipping Protection fee that its customers pay. Thursday Boot retains the other half purely as profit.

41.    Defendant's shipping fees, such as the Shipping Protection fee, are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

42.    As the FTC said recently in its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

43.    In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

44.    Defendant violates federal guidance and New York law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

**V.    Plaintiff's Experience**

45.    Plaintiff purchased merchandise from Thursday Boot's website, thursdayboots.com, on November 28, 2024.

46.    Plaintiff is informed and believes that on the date he purchased merchandise from Thursday Boot, he viewed a screen flow similar to the screen flow displayed above.

47.    When viewing Thursday Boot's website, Plaintiff was repeatedly informed that he would get free shipping as part of his purchase. Plaintiff relied on Thursday Boot's promise to provide free shipping in making each of his purchases.

48.    However, his purchase included a $2.98 Shipping Protection fee that was automatically and surreptitiously added to his cart via the pre-checked box, that—for the reasons described above—in fact represented an additional shipping charge.

49.    Plaintiff did not see the Shipping Protection charge, did not know the Shipping

Protection charge existed, and did not know that the Shipping Protection charge could be removed prior to his purchase.

50.    Plaintiff would not have purchased Shipping Protection if he knew it was optional.

## CLASS ALLEGATIONS

51.    Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements. The Class is defined as:

> All persons who, during the applicable statute of limitations, were charged a Shipping Protection Fee or similar fee by Defendant.

52.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

53.    Excluded from the Class are Defendant, its consumers, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54.    The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

55.    The claims of the representative Plaintiff are typical of the claims of the Class he seeks to represent in that the representative Plaintiff, like all members of the Class, were charged improper and deceptive fees as alleged herein. The representative Plaintiff, like all members of the Class, was damaged by Defendant's misconduct in that he was charged Shipping Protection fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class

and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And Defendant has no unique defenses that would apply to Plaintiff and not the Class.

56.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

57.     The questions of law and fact common to the Class include, but are not limited to, the following:

a.     Whether Defendant's assessment of Shipping Protection fees was unfair, deceptive, or misleading;

b.     Whether Defendant's assessment of Shipping Protection fees breached the contract;

c.     The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

d.     Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

58.     Plaintiff's claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful Shipping Protection fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

59.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately

protect the interests of the Class.

60.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual member of the Class's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

61.    Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

62.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

63.    Defendant has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

64.    All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New York General Business Law Section 349 *et seq.*
On Behalf of Plaintiff and the Class**

65.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

66.    This cause of action is asserted on behalf of the Class, whose members enjoy the protections of Article 22-A of the New York General Business Law, the Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

67.    Thursday Boot's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who made online purchases from Thursday Boot.

68.    The complained-of policies and practices were and are misleading in a material respect, because (a) Thursday Boot sneaks these fees into consumers' shopping carts using a prechecked box; (b) the fees are nothing more than an additional cost for shipping, rendering Thursday Boot's promise for "free" shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers, including reasonable consumers.

69.    Reasonable consumers, like Plaintiff, would not knowingly choose to pay the Shipping Protection fees, absent Defendant's deception.

70.    Plaintiff and members of the Class were injured as a result of Thursday Boot's policies and practices, in that they were charged Shipping Protection fees in a deceptive manner

as described herein.

71.     Thursday Boot's actions were willful and knowing.

72.     As redress for Thursday Boot's repeated and ongoing violations of these consumer protection statutes, Plaintiff and members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## SECOND CAUSE OF ACTION
### False Advertising – N.Y. Gen. Bus. Law § 350
### (On Behalf of Plaintiff and the Class)

73.     The preceding allegations are incorporated by reference.

74.     N.Y. Gen. Bus. Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

75.     Defendant's actions regarding the Shipping Protection fee, as described herein, constitutes false advertising in the conduct of the business trade or commerce of footwear.

76.     Plaintiff and the Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 350.

77.     Defendant's false advertising occurred, and continues to occur, in the course of Defendant's business.

78.     As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages.

79.     As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiff and the other members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

80.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

81.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

82.     Plaintiff and the Class conferred a benefit on Defendant.

83.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

84.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

85.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

86.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

87.     Plaintiff and Defendant have contracted for the purchase of merchandise.

88.     No contract provision authorizes Defendant to be able to charge add-on fees to customers.

89.     Defendant breached the terms of its contract with consumers by charging add-on fees such as the Shipping Protection fee.

90.     Plaintiff and members of the Class have performed all, or substantially all, of the

obligations imposed on them under the contract.

91.     Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Lee and the members of the Class seek an Order:

1.     Certifying the proposed Class pursuant to Rule 23;

2.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.     Declaring the Defendant has committed the violations of law alleged herein;

4.     Providing for any and all injunctive relief the Court deems appropriate;

5.     Awarding statutory damages in the maximum amount for which the law provides;

6.     Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7.     Providing for any and all equitable monetary relief the Court deems appropriate;

8.     Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9.     Awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

10.     Awarding pre- and post-judgment interest to the extent the law allows; and

11.     Providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

Date: May 23, 2025                          Respectfully submitted,

*/s/Sarah M. Levin*
Sarah M. Levin
Amanda J. Rosenberg (*pro hac vice* forthcoming)
Jeffrey D. Kaliel (*pro hac vice* forthcoming)
KalielGold PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 280-4783
slevin@kalielpllc.com
arosenberg@kalielgold.com
jkaliel@kalielpllc.com

Sophia G. Gold (*pro hac vice* forthcoming)
KalielGold PLLC
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Tyler B. Ewigleben (*pro hac vice* forthcoming)
Jennings & Earley PLLC
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (317) 695-1712
tyler@jefirm.com

*Counsel for Plaintiff and the Proposed Class*